## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **THOMAS SYNAN, JR.** | : | **CASE NO. 1:24CV169** |
| | : | |
| **PLAINTIFF,** | : | **JUDGE COLE** |
| | : | |
| **VS.** | : | |
| | : | |
| **MARK KOBASUK,** *et al.* | : | |
| | : | |
| **DEFENDANTS.** | : | |

---

### DEFENDANTS, MARK KOBASUK AND THE VILLAGE OF NEWTOWN, OHIO'S MOTION FOR SUMMARY JUDGMENT

---

COME NOW Defendants, Mark Kobasuk, in his official capacity and individual capacities, and the Village of Newtown, Ohio, by and through counsel, and pursuant to Federal Rule of Civil Procedure 56, and move this Court for summary judgment as to all claims alleged against them in Plaintiff's Complaint, as there exists no genuine issue of material fact and Defendants are entitled to immunity and summary judgment as a matter of law. This Motion is supported by the accompanying memorandum, Federal and Ohio law, the depositions of Plaintiff Thomas Synan, Mark Kobasuk, Terry Fairley, Chief Richard Wallace, and Jeff Drescher, filed herein.

Respectfully submitted,

*/s/ Katherine L. Barbiere*
Katherine L. Barbiere (0089501)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
5300 Socialville-Foster Road, Suite 200
Mason, OH 45040
T. 513-707-4252 | F. 513-583-4203
kbarbiere@smbplaw.com

*/s Emily T. Supinger*
Emily T. Supinger (0074006)
Strauss Troy Co, LPA
Federal Reserve Building
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio 45202

T. 513-621-2120 | F. 513-241-8259
etsupinger@strausstroy.com
***Attorneys for Defendants***

***/s/ Myrl H. Shoemaker, III***
Myrl H. Shoemaker, III (0099149)
Freund, Freeze & Arnold
88 East Broad Street, Suite 875
Columbus, Ohio 43215
T. 614-827-7300 | F. 614-255-7510
mshoemaker@ffalaw.com
***Attorney for Defendant Mark Kobasuk***

## COMBINED TABLE OF CONTENTS AND SUMMARY OF ARGUMENT

I.  TABLE OF CONTENTS…………………………………………………………....i

II.  INTRODUCTION……………………………………………………………..….3

III.  STATEMENT OF FACTS…………………………………………………………3

IV.  LAW AND ARGUMENT……………………………………………………...…11

A.  Summary Judgment Standard…………………………………………………....11

"Fed.R.Civ.P. 56 permits the use of summary judgment to ensure a just and efficient determination of legal actions when appropriate." *Stewart v. Iams Co.,* 2010 WL 1258108* 1 (S.D. Ohio, W.D. 2010); citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B.  Mark Kobasuk Is Entitled to Qualified Immunity……………………………………12

The qualified immunity analysis has two parts. One prong requires the court to ask whether "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court must also evaluate "whether the right was clearly established." *Id.* On a summary judgment motion, the burden is on the plaintiff to satisfy both prongs. See *Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6th Cir. 2018). (Emphasis added).

C.  Plaintiff's Claim for First Amendment Retaliation Fails As A Matter of Law..............17

In order to state a First Amendment retaliation claim, a public employee must point to evidence sufficient to establish three elements:

First, the employee must establish that his speech is protected. To accomplish this, the employee must show that his speech was made as a private citizen and touches on a matter of public concern, *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and demonstrate that his interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer. *Pickering v. Bd. of Ed. of Twp. High School Dist. 205,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This determination is a question of law for the court to decide. *Connick,* 461 U.S. at 148 n.10, 103 S.Ct. 1684. Second, the employee must show that the employer's adverse action would chill an ordinary person in the exercise of his First Amendment rights. *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir. 2001). Finally, the employee must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or

dismiss. *Mt. Health Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568.

D.  There Is No *Monell* Liability Against the Village of Newtown………………………20

Under *Monell,* the Supreme Court extended § 1983 liability to municipalities when a government policy or custom causes the deprivation of a federal right. 463 U.S. at 694, 98 S.Ct. 2016.  A municipality may not be found liable under § 1983 "solely because it employs a tortfeasor." *Id.* at 691, 98 S.Ct. 2018.  A plaintiff "must identify [a] policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Jackson v. City of Cleveland,* 925 F.3d 793, 829 (6th Cir. 2019).

E.  Mark Kobasuk In His Individual Capacity Is Entitled to Political Subdivision Immunity As To Plaintiff's State Law Claims……………………………………………..………21

There is no evidence that Kobasuk acted outside the scope of his employment and there is no section of the Revised Code that expressly imposes liability upon Kobasuk related to the facts and claims alleged in this case. Sections 2744.03(A)(6)(a) and (c) simply do not apply. Further, the evidence does not support a finding that Kobasuk acted wantonly or recklessly under Section 2744.03(A)(6)(b).

F.  Plaintiff's Defamation Claim Fails As A Matter of Law……………………………...24

The elements of the common-law action of defamation are (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Weber v. Ferrellgas, Inc.,* 2016-Ohio-4738, 68 N.E.3d 207 ¶ 42 (11th Dist.); *also Hahn v. Kotten,* 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975).  Expressions of opinion are generally protected under Ohio law. *Byrne v. Univ.*  In Ohio, defamation claims are subject to a one-year statute of limitations and the claim accrues upon the first publication. *AIX Specialty Ins. Co. v. Big Limo, Inc.,* 547 F.Supp.3d 757, 766 (S.D. Ohio 2021).

G.  Plaintiff's Claim For False Light Fails As A Matter of Law………………………...28

A claim for false-light invasion of privacy occurs when "[o]ne who gives publicity to a matter concerning another that places the other before he public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld,* 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051. The primary distinction between defamation and false-light is "the information at issue must be 'publicized' which is different than 'published.'" *Dickinson v. Spieldenner,* 6th Dist., 2017-Ohio-667, 85 N.E.3d 552, ¶ 29, *quoting Welling* at ¶ 52. Stated otherwise, "the information is disseminated 'to the public at large, or to so many persons that the matter must be substantially certain to become public knowledge.'" *Id.,* quoting *Welling* at ¶ 53. Further, "false-light invasion of privacy defendants are afforded at least as much protection as defamation defendants." *Id.* at ¶ 30. Accordingly, "the defense of qualified privilege may apply," and "the same reasons that necessitate the dismissal of a defamation claim may support the dismissal of a false-light claim." *Id.*

H. Plaintiff's Claim For Intentional Infliction of Emotional Distress Fails As A Matter of Law……………………………………………………………………………………..29

In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt. Inc.,* 71 Ohio St.3d 408, 410-411, 644 N.E.2d 686 (1994). "Whether conduct rises to the level of extreme and outrageous conduct constitutes a question of law." *Krlich v. Clemente,* 2017-Ohio-7945, 98 N.E.3d 752 ¶ 26 (11th Dist.), quoting *Jones v. Wheelersburg Local School Dist.,* 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, 2013 WL 4647645.

I. There Is No Claim For Retaliation in Violation of Public Policy……………………30

Ohio courts have not recognized a claim for retaliation in violation of public policy. In *Bools v. General Electric Co.*, this Court explained that "our review of Ohio law finds no case extending the public policy tort to claims involving a wrongful failure to hire or retaliation." The court held that the plaintiff's public policy claim for a wrongful failure to hire or retaliation failed as a matter of law because Ohio courts were reluctant to expand the exception to the doctrine of employment-at-will beyond wrongful termination claims. *Bools v. General Elec*. Co., 70 F.Supp.2d 829, 832 (S.D. Ohio 1999).

J. Plaintiff's Claim For "Intentional Interference" Fails As A Matter of Law………..…31

In *Daup v. Tower Cellular, Inc.* (2000), 136 Ohio App.3d 555, 568, 737 N.E.2d 128, the court stated that "while actions for intentional interference with an employment contract are cognizable against 'outsiders' to the employment relationship, Ohio courts have been reluctant to recognize actions by employees against their supervisor made within the scope of the defendant's duties." See, e.g., *Rayel v. Wackenhut Corp.* (June 8, 1995), Cuyahoga App. No. 67459, 1995 WL 350077 ('this court has unequivocally stated that 'a supervisor of an employee cannot be held liable for tortious interference with contract.' *** As such, appellant's claim involves a suit by a subordinate employee against a supervisor. Under the law of this district, no such action can lie.").

"The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach of termination of the relationship; (4) damages resulting therefrom. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.,* 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775. "In such cases the law has generally required proof that the defendant has acted maliciously." *A&B-Abell Elevator,* 73 Ohio St.3d at 15, 651 N.E.2d 1283. A party cannot tortiously interference with his own business relationship. *Castle Hill Holdings LLC v. Al Hut, Inc.,* Cuyahoga App. No. 86442, 2006-Ohio-1353, 2006 WL 726911.

K. There Has Been No Violation of Ohio's Open Meeting Act………………………….33

As a preliminary matter, a presumption of regularity exists when a public body enters into executive session to discuss employee matters. *State ex rel. Hicks v Clermont Cnty. Bd. of Commissioners,* 2022-Ohio-4237, 171 Ohio St.3d 593, 599, 219 N.E.3d 894, 901. Under this presumption of regularity, absent evidence to the contrary, courts should presume that a public body in executive session discussed the topics stated in its motion to enter executive session and did not discuss any matters not stated in the motion. *Id.* It is the plaintiff's burden to prove otherwise. *Id.*

L. Plaintiff Is Not Entitled to Injunctive or Declaratory Relief ………………..…….34

Courts weigh five factors before exercising discretion as to whether the issue declaratory relief. Those factors are:

(1) Whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being use merely for the purpose of "procedural fencing" or "to provide an arena for the race for res judicata"; (4) whether the use of a declaratory action would increase the friction between

our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.,* 161 F.Appx. 562, 563 (6th Cir. 2006).

M.   Punitive Damages Are Not Available Here……………………………………....35

The Ohio Supreme Court "has long prohibited the assessment of punitive damages against a municipal corporation, except when specifically permitted by statute." *Cementech, Inc. v. Fairlawn,* 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, ¶ 12, citing *Rannells v. Cleveland,* 41 Ohio St.2d 1, 6-7, 321 N.E.2d 885 (1975) (emphasizing that the burden of punitive damages assessed on a municipal corporation would fall on the taxpayers).

Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Because punitive damages are a mechanism for punishing the defendant for "willful or malicious conduct," they may be granted "only on a showing of the requisite intent." *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 310, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Here, there is no showing that Kobasuk acted with malice.

N.   Plaintiff's Age Discrimination Claim Fails As A Matter of Law………...……….36

Plaintiff's final claim for relief alleges age discrimination under both Federal and Ohio law. To establish a prima facie claim of age discrimination under the ADEA, a plaintiff must show that: (1) he was at least forty years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker. *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 317 (6th Cir. 2007). Age discrimination claims brought under the Ohio statute are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman-Rupp Co.,* 309 Fed.Appx. 990, 995 (6th Cir. 2009).

V.   CONCLUSION…………………………………...……………….………………………39

     CERTIFICATE OF SERVICE……………………………………...…………………………40

# M E M O R A N D U M

## II.    INTRODUCTION

Plaintiff filed his Amended Complaint on July 15, 2024.  (Doc 13).  Plaintiff's Amended Complaint alleges nine causes of action and violations of 42 U.S.C. § 1983 against Mark Kobasuk and the Village of Newtown, Ohio based upon the alleged interference with and adverse employment actions against Plaintiff Synan.   The causes of actions are as follows: First Amendment retaliation in violation of 42 U.S.C. § 1983; defamation; false light; intentional infliction of emotional distress; retaliation in violation of public policy; intentional interference; violation of Ohio's Open Meetings Act; declaratory and injunctive relief; and age discrimination claims.[1]  This Motion for Summary Judgment is directed to all claims set forth in the Amended Complaint and is based upon the uncontroverted facts revealed during the discovery depositions taken in this matter.  There is no *Monell* liability as against the Village of Newtown here. Mark Kobasuk is entitled to qualified immunity with respect to the Federal claim alleged against him and Kobasuk and the Village of Newtown are entitled to political subdivision immunity with respect to Plaintiff's claims set forth under the law of Ohio.  Further, Plaintiff's claims fail as a matter of law.

## III.    STATEMENT OF FACTS

Chief Thomas Synan is the current police chief for the Village of Newtown, Ohio.  (Doc 53, Depo. of Synan, PAGEID 1459).  He was appointed to that position in 2007 and has served an

---

[1] Plaintiff has moved for leave to file a Second Amended Complaint.  That Motion was opposed by all defendants and is pending before the Court.  The proposed Second Amended Complaint purports to raise two new causes of action: due process violations pursuant to 42 U.S.C. § 1983 and breach of contract and obligation of good faith and fair dealing.  For the reasons set forth in Defendants' memorandum in opposition (Docs 41 and 42), incorporated herein by reference, that Motion should be denied and those claims fail as a matter of law.

uninterrupted term through today. *Id.* Prior to his role as Police Chief, Synan served Newtown as a patrol officer, sergeant, lieutenant and then acting chief. *Id.* Synan has not been suspended or fired at any time during his tenure as a Newtown officer. *Id.* at 1566-1567, Doc 13, Amended Complaint, PAGEID 137, ¶ 5.

Mark Kobasuk is the former mayor for the Village of Newtown. (Doc 54, Depo. of Kobasuk, PAGEID 1877). Kobasuk was originally appointed to Village Council for the Village of Newtown in June of 2005. *Id.* at 1789. Kobasuk then ran for election in November of 2005 and won his seat. *Id.* While Kobasuk was on Village Council, Synan testified he and Kobasuk had a good working relationship. *Id.* at 1497. Synan testified he interacted with Kobasuk personally and socially when Kobasuk took shooting lessons from Synan's private company. *Id.* at 1497-1498. Kobasuk testified he voted to appoint Synan the Chief of Police. (Doc 54, PAGEID 1877).

Kobasuk became Mayor of Newtown on January 1, 2016. *Id.* at 1877. Kobasuk resigned as mayor in June of 2025 and the position was filled by Terry Fairley. (Doc 56, Depo. of Fairley, PAGEID 2274). During Kobasuk's tenure as Mayor, the only discipline ever issued to Synan was a written reprimand. (Doc 54, PAGEID 1880-1881). Kobasuk testified that no other discipline was ever contemplated or discussed involving Synan. *Id.* at 1880.

Plaintiff's Amended Complaint details allegations dating back to 2016, outside the two-year statute of limitations applicable to claims against political subdivisions or under Section 1983. The first allegation concerns a meeting that took place on September 12, 2016. (Doc 13, Amended Complaint, PAGEID 140). During that meeting, Mayor Kobasuk introduced new time sheets and directed the Department Heads to begin requiring all employees to utilize the form sheet. (Doc 54, PAGEID 1884). Following the meeting, Chief Synan stayed to discuss the time sheets with Kobasuk. *Id.* at 1885. The Mayor explained that Village Council, and in particular

4

Councilmember Short, was concerned that certain employees were putting in less than the required 40 hours. *Id.* at 1885-1886. As such, all employees were to notify the Mayor if they were going to be late or absent from work. *Id.* at 1884. Synan objected to filling out a timesheet for his own time because he was an exempt employee. *Id.* at 1887. At the time of the meeting, Synan testified he was turning in a timesheet every two weeks that listed his sick and vacation time only. (Doc 53, PAGEID 1479). Synan testified he was submitting those sheets to the fiscal officer in order to get paid. *Id.* at 1477. He was not, during his tenure as Chief and up and until January of 2017, recording his work schedule. *Id.* at 1481. Kobasuk testified that only two employees were not recording their time – the maintenance supervisor and chief of police. (Doc 54, PAGEID 1812).

Kobasuk asked Syann to turn in his time on the sheet introduced at the September 2016 meeting. *Id.* at 1482. Kobasuk also asked Synan to work basic business hours, Monday through Friday, and tune in a calendar of his events to Becky Fairley, the Village secretary. *Id.* Synan testified he cooperated with the timesheet request for a period in 2017 until he hired a lawyer, also in 2017. *Id.* at 1483. During that same period, when Synan sent a list of questions from his attorney to the Village secretary, he also stopped sharing his calendar of events. *Id.* at 1489. Synan began keeping a timesheet again in 2024 when Village council passed new personnel practices in 2024. *Id.* at 1488. From 2018 to 2024, Synan kept only one timesheet which included his sick and vacation time. *Id.* at 1494.

In the 2016 timeframe in which Synan was asked to keep a timesheet, he sent an email to Mayor and Council detailing his concerns as to why he should not be asked to do so. (Doc 38-1, Exhibits to Kobasuk Depo., PAGEID 782). In the email, Synan raised concerns about Salary Exempt Employees keeping time and other FLSA exemptions. Due to the email from Synan and ongoing concerns regarding timesheets, FLSA requirements and ensuring the Newtown was

appropriately spending its public funding, the Village retained Douglas Duckett to perform a review of Newtown's practices. (Doc 54, PAGEID 1792-93, 1899, 1919). Mr. Duckett performed that review and authored a presentation to Council describing his findings. (Doc 38-1, Exhibits to Kobasuk Depo, PAGEID 673-678). During Mr. Duckett's review of the law and Newtown's policies, an anonymous complaint from a Newtown police officer was received by the mayor's administrative assistant detailing four points of review. (Doc 54, PAGEID 1793, Doc 38-1, PAGEID 691). In response to receiving this complaint, Kobasuk asked Duckett to look into the allegations. (Doc 54, PAGEID 1793). The police officer who delivered the note was Kent Orso. (Doc 54, PAGEID 1795). Duckett then conducted an interview of Officer Orso and Officer Robinson regarding their complaints. (Doc 38-1, PAGEID 683-696). Officer Robinson approached Mr. Duckett on his own and requested a conversation. (Doc 54, PAGEID 1803). Duckett reported the officers reached out to him to discuss concerns about how much time and Village money Chief Synan was spending outside of Newtown when Newtown was short on both officers and equipment. *Id.* at 1804. The officers spoke with Duckett on condition of anonymity because they feared retaliation. *Id.* at 1806. During the interviews, both officers raised concerns about Synan and his management of the police department. *Id.* at 1807. In addition to hearing these complaints from the officers, Kobasuk also heard that Synan spent a fair amount of time outside of the Village on outside activities. *Id.* at 1818. Those activities included SWAT and the Heroin Coalition. *Id.* Synan also told Kobasuk that he did not work on Mondays. *Id.* Kobasuk testified that, in 2016, he did not discuss Synan's additional activities with him because he assumed he would get a better understanding of his schedule from his timesheets. *Id.* at 1828-1829. Kobasuk testified he did not receive a detailed timesheet from Synan until January of 2024. *Id.* Kobasuk testified that if Synan was going to be out of Hamilton County on activities related to

SWAT or the Heroin Coalition, he would notify the mayor of his absence.  If he was attending events in Hamilton County, he did not seek pre-approval.  *Id.* at 1863-1864.

In the same 2016 time period that Duckett was conducting interviews of the complaining officers, a rumor was also circulating that Synan allowed a civilian woman to drive him home from a bar when he was intoxicated.  (Doc 54, PAGEID 1905).  Kobasuk testified he heard the rumor from Synan directly.  *Id.* at 1906.  In addition, Becky Fairley, the administrative assistant to the Mayor, reported seeing Synan driving on Round Bottom Road with a woman in his police vehicle. *Id.* at 1905-1906.  In response to hearing the rumor, Kobasuk offered to provide a letter to Synan disavowing the rumors.  (Doc 54, PAGEID 1919, Doc 38-1, Ex. 13, PAGEID 795).  The letter was provided to Synan only.  (Doc 54, PAGEID 1919).  On December 25, 2016, Kobasuk proposed an "action plan" to address the complaints received about morale in the department.  (Doc 38-1, Ex. 12 and 14, PAGEID 793 and 796).  The Action Plan was rescinded before it went into effect.  (Doc 54, PAGEID 1925).

Following the rumor and issuance of the December 2016 letter from Kobasuk, in January of 2017, Chief Richard Wallace of Amberly Village reached out to Kobasuk asking to get together. (Doc 58-1, PAGEID 2629).  When Chief Wallace contacted Kobasuk, his understanding was there was a morale issue within the Newtown Police Department that was a concern for the mayor.  (Doc 58, PAGEID 2500-2501).  Chief Wallace testified he had also heard the rumor about Synan being intoxicated in the unmarked cruiser with a female driver.  *Id.* at 2501-2502.  Chief Wallace testified he heard the rumor from Synan and possibly from another police chief.  *Id.*  He testified he did not discuss the rumor with Kobasuk.  *Id.*  at 2501.

Chief Wallace testified that Kobasuk requested he evaluate the operation of the Newtown Police Department and make recommendations as to areas of improvement.  *Id.* at 2504.  In

connection with that requested review, Kobasuk raised concerns about the time Synan spent outside of the Village, including time spent at SWAT and the Heroin Coalition. *Id.* at 2503. Chief Wallace then interviewed the officers working for the Newtown Police Department as well as Kobasuk and the fiscal officer. *Id.* at 2505-2506. Following his investigation, Chief Wallace made several recommendations to improve operations within the Department. He recommended that Synan resign from the SWAT team. *Id.* at 2507. Chief Wallace recommended to the mayor that the part-time police officers should not be able to make complaints directly to the fiscal officer. *Id.* at 2508-2509. Overall, Chief Wallace concluded there were approximately three officers who were not in support of Synan and those officers were creating a hostile work environment for the group. *Id.* at 2511. Chief Wallace concluded both the mayor and Synan needed to improve communication with the other. *Id.* at 2512. Chief Wallace recommended Synan make purchases to improve the equipment in the officers' vehicles. *Id.* at 2514.

At the same time he was consulting with Chief Wallace regarding the operation of the department, Kobasuk sought counsel from other sources regarding aspects of operation. In December of 2016, Kobasuk spoke to Mike Burns, formerly of the Village of Indian Hill, in an effort to hire a Village Administrator. (Doc 54, PAGEID 1994-1995). Kobasuk spoke to Burns about keeping timesheets but Burns did not have any information regarding the operation of a police department. *Id.* at 1995-1996. Kobasuk raised with Burns a prior issue in the Village of Newtown wherein a 911 caller made a report that Synan had pulled her over in an unmarked car. *Id.* at 1996-1998. Burns did not have any recommendation as to how that should be handled. Kobasuk spoke to Scott Lahrmer, of Amberly Village, also about hiring a Village Administrator and the keeping of timesheets. *Id.* at 2028-2029. Kobasuk spoke with Lt. Chin about village police chiefs and participation in SWAT. *Id.* at 2027-2028.

Plaintiff then avers in the Amended Complaint that no significant issues arose until May of 2022. (Doc 13, PAGEID 149). In this allegation, Synan alleges the mayor pressured him into supporting Kobasuk's intention to remove auxiliary officers. *Id.* The next allegation involves a Safety Committee Meeting held on January 10, 2023. (Doc 13, ¶ 54, PAGEID 150). Synan testified that the need for the meeting arose after Councilmember Jeff Drescher requested an exit interview with Officer Jake Stoll. (Doc 53, PAGEID 1614). Drescher testified that he got news Officer Stoll was leaving the department. (Doc 57, Jeff Drescher Depo., PAGEID 2384). Drescher testified he asked a couple officers why Stoll was leaving and whether it was something that could be fixed within the department. *Id.* at 23284-2385. He testified he did not receive clear responses from the officers he spoke to and therefore Drescher contacted the mayor and mentioned that he would like to conduct an exit interview of Stoll. *Id.* at 2385-2386. The mayor agreed to the interview and spoke with Drescher to work with Synan to set it up. *Id.* at 2386. Officer Stoll was contacted and declined the exit interview. *Id.* at 2388.

After Drescher's request for an exit interview, Synan testified that a Sergeant within the department contacted him and wanted to address council over what he perceived was a 'witch-hunt' against the Chief. (Doc 53, Tom Synan Depo., PAGEID 1614-1615). The same Sergeant requested a Safety Committee Meeting with council to address his concerns. The meeting was held on January 10, 2023. *Id.* at 1613. Synan testified that he made one comment at the meeting in response to a request for a succession plan. *Id.* at 1616. Synan testified at least four officers spoke at the meeting. *Id.* at 1618.

Following the Safety Committee Meeting, Kobasuk issued a written reprimand to Synan. (Doc 54, PAGEID 1946-1947, Doc 38-1, Ex. 19, PAGEID 807-809). In the written reprimand, issued February 6, 2023, Kobasuk addressed issues with Synan he believed were not being appropriately

addressed within the department. The written reprimand specifically addressed Synan's opposition to the request for an exit interview. The written reprimand also addressed Kobasuk's belief that Synan was not appropriately communicating with his officers based upon comments made at the Safety Committee meeting. *Id.* Synan refused to sign the written reprimand. (Doc 53, PAGEID 1620).

During Synan's tenure as Police Chief, the Village of Newtown established salary ordinances in an effort to address police and other pay within the Village of Newtown. (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2133-2134). The salary ordinance selected several neighboring entities to be used as benchmarks or comparables to guide raises within the Village. *Id.* at 2134-2135. Terry Fairley, a councilmember at the time, and the fiscal officer Keri Everett, worked together to make salary recommendations to be approved by council. *Id.* at 2135-2136. There were six total entities considered when making salary recommendations. *Id.* In order to develop recommendations for council consideration, Everett would call the six entities and ask for the particular community's salary ordinance. *Id.* at 2138. In addition to that data, Fairley and Everett would also consult data from the Center for Local Government. *Id.* at 2138-2139. Everett and Fairley put together a spreadsheet with the recommended percentage increases for every employee in the Village of Newtown. *Id.* at 2139. The recommendations are reviewed with the mayor and then presented to council. Council has the ultimate vote; the mayor can make recommendations but cannot determine salaries. *Id.* at 2139-2140, Doc 55-4, PAGEID 2204-2218. Once council has an opportunity to review the recommendations, council passes a salary ordinance in open meeting. *Id.* at 2141. In 2023, Synan received a 2.05% raise. *Id.* at 2143, Doc 55-4, PAGEID 2211. This raise was based upon the data from the Center for Local Government as well as the comparable communities. Doc 55, PAGEID 2146; Doc 57, PAGEID 2427-2428. In 2024, Synan

received a 1% raise. (Doc 55-4, PAGEID 2211). The 2024 raise was also data driven based upon the research conducted by Fairley and the Fiscal Officer. (Doc 55, PAGEID 2147-2148). In connection with the data, councilmember Fairley also considered the written reprimand issued to Synan during the 2023 calendar year. *Id.* at 2153. Synan received a 3.5% raise for 2025. (Doc 53, PAGEID 1460).

## IV. ARGUMENT

### a. Summary Judgment Standard

"Fed.R.Civ.P. 56 permits the use of summary judgment to ensure a just and efficient determination of legal actions when appropriate." *Stewart v. Iams Co.,* 2010 WL 1258108* 1 (S.D. Ohio, W.D. 2010); citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the grant of summary judgment is proper when the nonmoving party fails to identify any genuine issues of material fact that would require resolution at trial. *Id.* A party cannot rest "upon the mere allegations or denials of his pleading, but…must set forth specific facts showing that there is a genuine issue for trial" to oppose the properly supported motion for summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed. 2d 569 (1968). "[T]he court should not view the facts in the light most favorable to the nonmovant if that party's version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). If the evidence is merely colorable, or is not significantly probative, judgment may be granted. *Stewart,* 2010 WL at *1.

**b. Mark Kobasuk Is Entitled to Qualified Immunity**

Mark Kobasuk is entitled to qualified immunity with respect to all of Plaintiff's claims set forth under 42 U.S.C. § 1983. **Once the qualified immunity defense is raised, the *burden* is on the plaintiff to demonstrate that the officials are *not* entitled to qualified immunity**." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (Emphasis added); see also *El Bey v. Kehr*, 2021 WL 4033137, *7 (S.D. Ohio, Sept. 3, 2021) citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) ("Once a defendant has raised the defense of qualified immunity, the ***plaintiff bears the burden of proof to show that the defendant is not entitled to that defense*.") (Emphasis added).  In *Sexton v. Cernuto*, 18 F. 4th 177, 184 (6th Cir. 2021), the Sixth Circuit recently held the following in evaluating whether or not a government official was entitled to qualified immunity:

> The qualified immunity analysis has two parts. One prong requires the court to ask whether "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  **The court must also evaluate "whether the right was clearly established." *Id*.  On a summary judgment motion, the burden is on the plaintiff to satisfy both prongs**. See *Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6th Cir. 2018). (Emphasis added).

Thus, in order to avoid summary judgment in this case, the burden is on Synan to demonstrate Kobasuk violated constitutional rights which were "clearly established."  Plaintiff does not satisfy such burden.  Accordingly, Kobasuk is entitled to summary judgment on all Federal claims.

**i.      Plaintiff Fails To Demonstrate Violations of "Clearly Established" Constitutional Rights**

The United States Supreme Court recently clarified what is necessary for Plaintiff to demonstrate a law is "clearly established" in two recent decisions, both issued on October 18, 2021: 1) *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021) and (2) *Rivas-Villegas v.*

12

*Cortesluna*, 142 S.Ct. 4 (2021). In both cases, the Supreme Court held the defendant police officers were entitled to qualified immunity because plaintiffs failed to demonstrate the officers' conduct constituted violations of "clearly established" Fourth Amendment constitutional rights.

In *City of Tahlequah, Oklahoma v. Bond,* 142 S.Ct. 9, 11 (2021), the Supreme Court reversed the Tenth Circuit Court of Appeals' decision concluding that a jury could find that the officers "cornering" of plaintiff in the back of a garage recklessly created the situation that led to their ultimate use of deadly force. *Id.* The Supreme Court held the following:

> **We have repeatedly told courts not to define clearly established law at too high a level of generality**. See, e.g., *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). **It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"** *Wesby*, 583 U. S., at ——, 138 S.Ct., at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). **Such specificity is "especially important in the Fourth Amendment context,"** where it is **"sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."** *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). *Id* at 11-12. (Emphasis added.)

In *Rivas-Villegas v. Cortesluna,* 142 S.Ct. 4 (2021), the Supreme Court reversed a Ninth Circuit Court of Appeals' decision holding that an officer's conduct in placing his knee on a suspect's back for no more than eight seconds while another officer retrieved a knife from the suspect's person did ***not*** violate a "clearly established" Fourth Amendment constitutional right. In holding that the defendant officer was entitled to qualified immunity, the Supreme Court held the case upon which the Ninth Circuit primarily relied upon to support its "clearly established" inquiry was materially distinguishable and that "**to show a violation of clearly established law**, [plaintiff] Cortesluna **must identify a case** that put [defendant officer] Rivas-Villegas **on notice that his specific conduct was unlawful**." *Id* at 8. (Emphasis added).

13

In this case, the evidence fails to establish any infringement on a clearly established constitutional right. Further, with respect to Kobasuk, even if the Court were to find Synan's right to be free of retaliation based upon his exercise of free speech was violated (it was not as is discussed in more detail below), this right was not clearly established. The Supreme Court, in a recent decision, discussed what constitutes clearly established law within the context of a First Amendment retaliation claim. See *Reichle v. Howards,* 566 U.S. 658, 132 S.Ct.2088, 182 L.Ed.2d 985 (2012). In granting qualified immunity in the context of a First Amendment retaliation claim, the Court explained that "the right question [was] not the general right to be free from retaliation for one's speech," but "the more specific right to be free from a retaliation arrest that [was] otherwise supported by probable cause." 566 U.S. at 665, 132 S.Ct. 2088. *Reichle* therefore instructs that the clearly established inquiry does not consist solely of the general right to be free from retaliation for one's speech. It must factor in the actual retaliatory adverse action: there, an arrest supported by probable cause; here, the issuance of a written reprimand.

In addition, the law of this Circuit has held previously that a suspension with pay does not constitute an adverse action in the context of a First Amendment retaliation claim. *See, e.g., Ehrlich v. Kovack,* 710 F.App'x 646, 650 (6th Cir. 2017) (First Amendment retaliation claim); *Harris v. Detroit Pub. Schs.,* 245 F.App'x 437, 443 (6th Cir. 2007) (same). Indeed, the Sixth Circuit recently rejected a claim that a Letter of Reprimand constitutes an adverse action for purposes of a First Amendment claim. *Sensabaugh v. Halliburton,* 937 F.3d 621, 629 (6th Cir. 2019). Further, any claim that the written reprimand, which was considered by Fairley and other members of council, informed Synan's 2024 raise, though it was ultimately based upon the comparable data available, there is still no evidence of adverse action pursuant to the law of this Circuit. *Id.* (In the employment context, the term 'adverse action' has traditionally referred to

14

actions such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote).

Here, it is alleged Kobasuk issued a written reprimand following Synan's comment about a succession plan at a Village meeting. A review of relevant caselaw does not reveal any case which would put Kobasuk on notice that his conduct was unconstitutional. To the contrary, as is set forth below, the conduct of Kobasuk was well within the parameters of the constitution and within the policies and practices of the Village of Newtown. Mark Kobasuk, sued in his individual capacity, is therefore entitled to qualified immunity as a matter of law with respect to all constitutional claims alleged against him.

### ii.    Kobasuk's Conduct Did Not Violate A Constitutional Right

Under the second prong of the analysis, Plaintiff's claims fall well below the necessary showing that Synan's constitutional rights were violated. Further, it is clear based upon the testimony and evidence discovered in this case that none of Synan's constitutional rights were violated. As is set forth below, Synan's comment at the January 10, 2023 Safety Committee Meeting were not in his capacity as a private citizen and the statement was not made on a matter of public concern. Synan was addressing the mayor and council regarding complaints that his officers had with respect to the operation of the police department and, specifically, the request for an exit interview from a departing officer. These matters do not fall within the ambit of the Constitution and the Federal Court is not the forum for voicing employee concerns. For these reasons, and the reasons set forth in more detail in the following sections, it is clear the conduct of Kobasuk did not violate any constitutional rights and is entitled to qualified immunity, and summary judgment, as a matter of law.

### iii.    A Reasonable Official In The Same Position Would Not Have Known He Was Violating a Constitutional Right

Finally, even if Plaintiff can show that a constitutional right has been violated, and was clearly established, which he cannot, a reasonable person in Kobasuk's position would not have known they were violating Synan's constitutional rights.  In other words, "qualified immunity shields an [official] from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law"). "Importantly, qualified immunity does not demand perfect understanding of the applicable laws." *Id.* There is "ample room for mistaken judgments," and "all but the plainly incompetent or those who knowingly violate the law" will be held to enjoy qualified immunity. *Id.* citing *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).  As set forth above, and below, Kobasuk issued a written reprimand to Synan after it became clear to him that Synan was not communicating the actions of council appropriately to his staff.  Following the Safety Committee Meeting, Kobasuk, as the CEO of the Village and supervisor of the police chief, found that the Chief failed to communicate vital information to his department that in turn caused significant morale issues in Newtown.  Kobasuk issued a written reprimand only based upon the prior conduct of Synan and his failure to follow directives of the mayor and council.  The mayor was well within his authority, pursuant to the Personnel Policy, to issue a written reprimand to Synan and could do so for matters pertaining to his employment.  A reasonable official in Kobasuk's position would

not have known he was violating any constitutional rights. Accordingly, Kobasuk is entitled to qualified immunity as to any federal claims alleged against him and therefore summary judgment should issue as a matter of law.

### c. **Plaintiff's Claim for First Amendment Retaliation Fails As A Matter of Law**

Plaintiff's claim for First Amendment Retaliation in violation of 42 U.S.C. § 1983 fails as a matter of law. Synan testified his retaliation claim is premised upon his statement at the January 10, 2023 Safety Committee Meeting. (Doc 53, PAGEID 1631-1632). He testified the retaliation he is alleging is the issuance of the written reprimand. *Id.*

In order to state a First Amendment retaliation claim, a public employee must point to evidence sufficient to establish three elements:

> First, the employee must establish that his speech is protected. To accomplish this, the employee must show that his speech was made as a private citizen and touches on a matter of public concern, *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and demonstrate that his interest in the speech outweighs the government's countervailing interest in promoting the efficiency of the public service it provides as an employer. *Pickering v. Bd. of Ed. of Twp. High School Dist. 205,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This determination is a question of law for the court to decide. *Connick,* 461 U.S. at 148 n.10, 103 S.Ct. 1684. Second, the employee must show that the employer's adverse action would chill an ordinary person in the exercise of his First Amendment rights. *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1048 (6th Cir. 2001). Finally, the employee must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss. *Mt. Health Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Taylor v. Keith,* 338 F.3d 639, 643 (6th Cir. 2003).

Public employees, by virtue of necessity of their employment, "must accept certain limitation on [their] freedom." *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Government employers, like their private-sector counterparts, "need a significant degree of control over their employees' words and actions," for without it, "there would be little chance for the

efficient provision of public services." *Id.* Public employees do retain the right, "in certain circumstances, to speak as a citizen addressing matters of public concern." *Id.* So long as public employees speak as citizens regarding matters of public concern, "they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419-420, 126 S.Ct. 1951 ("[W]hile the First amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" (quoting *Connick v. Meyers,* 461 U.S. 138, 154, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983))).

In this Circuit, "[a] matter of public concern usually involves a matter of political, social, or other concern to the community." *Jackson v. City of Columbus,* 194 F.3d 737, 746 (6th Cir. 1999). If the speech is found to be a matter of public concern, the Court must then determine whether the plaintiff's First Amendment interests outweigh the defendant's interest as an employer "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. In striking the balance, the Sixth Circuit has analyzed several factors including whether the speech:

> Related to an issue of public interest and concern; was like to foment controversy and disruption; impeded the department's general performance and operation; affected loyalty and confidence necessary to the department's proper functioning; subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work. *Solomon v. Royal Oak Twp.,* 842 F.2d 862, 865 (6th Cir. 1988) (citing *Pickering,* 391 U.S. at 569-73, 88 S.Ct.1731).

Here, Synan's speech does not satisfy any of the elements set forth above. First, it is clear he was not speaking as a private citizen on matters of public concern. The speech Synan is alleging was protected is his comment to the mayor and council that a request for a succession plan indicated a desire to get rid of the Chief. (Doc 53, PAGEID 1616, 1631). This is not a matter of public

concern. See *Connick v. Meyers,* 461 U.S. at 147-49 (holding that "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency," and that "one employee's dissatisfaction" with personnel decisions ordinarily does not give rise to a retaliation claim). Put simply, "the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* at 149.

Further, it is clear Synan was not speaking as a private citizen. As the Supreme Court has explained, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951. Courts look to the "content and context" of the speech to determine whether it was made in connection with an employee's official duties, including "the impetus for [the] speech, the speech's audience, and its general subject matter." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 540 (6th Cir. 2012). Other considerations include "whether the statements were made to individuals 'up the chain of command,' and whether the content of the speech is 'nothing more than the quintessential employee beef: [that] management has acted incompetently.'" *Id.*

Here, the speech involved employee and personnel complaints by members of the police department to the mayor and members of council. These complaints touched on salary decisions, access to gym memberships, and donations to a GoFundMe fundraiser. (Doc 38-1, PAGEID 807-808). Synan testified the meeting was called because the police officers were distressed over a request for an exit interview. Synan testified his only comment related to a succession plan. This is not speech protected by the First Amendment.

In addition, under the second and third elements necessary to establish this claim, Synan also fails. The issuance of a written reprimand is insufficient to chill an ordinary person in the

19

exercise of his First Amendment rights. Finally, his speech was not the motivating factor for the written reprimand. As is evidenced in the reprimand, and pursuant to the testimony of Kobasuk, any statement Synan made regarding a succession plan had no bearing. It is clear from the language of the reprimand that Kobasuk was concerned about Synan's communication or miscommunication with his department regarding elements of their employment – including what their raises would be for the year and access to gym memberships that had been approved by council. Synan's First Amendment claim therefore fails as a matter of law.

### d. There is No *Monell* Liability Against The Village of Newtown

There can be no *Monell* liability against the Village of Newtown for any alleged constitutional violation. Synan alleges in his Amended Complaint that the Village had official policies, customs and practices that caused Constitutional violations. (Doc 13, PAGEID 162-163). Synan alleges that Kobasuk and other members of council made 'deliberate choices' which represent official policies of the Village. *Id.*

Under *Monell,* the Supreme Court extended § 1983 liability to municipalities when a government policy or custom causes the deprivation of a federal right. 463 U.S. at 694, 98 S.Ct. 2016. A municipality may not be found liable under § 1983 "solely because it employs a tortfeasor." *Id.* at 691, 98 S.Ct. 2018. A plaintiff "must identify [a] policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Jackson v. City of Cleveland,* 925 F.3d 793, 829 (6th Cir. 2019). As set forth above, Synan alleges only that Newtown's § 1983 liability arises from the written reprimand issued by Kobasuk after the Safety Committee meeting. This is not a constitutional violation and, without an underlying constitutional violation, there can be no municipal liability under § 1983. However,

even if the Court were to find Kobasuk violated Synan's First Amendment rights, there can be no Village liability on the basis of *respondeat superior.*

Plaintiff apparently attempts to establish *Monell* liability on a single-act theory, asserting that Mayor Kobasuk and, ultimately council, retaliated against Synan for his exercise of his constitutional rights. This was purportedly accomplished through the written reprimand received by Synan. On a single-act theory, a plaintiff must demonstrate that a "deliberate choice to follow a course of action is made from among various alternatives by the official…responsible for establishing final policy with respect to the subject matter in question. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-84, 106 S.Ct. 1292, 89 L.Ed.2d.452 (1986). Moreover, the course of action must be shown to be the moving force behind or cause of the plaintiff's harm. *Id.* at 484-85. Here, Plaintiff fails to make the necessary showing. Kobasuk's issuance of a written reprimand did not establish policy on behalf of Newtown. There has been no practice set by the issuance of a reprimand and there can be no course of illegal conduct that flows from the issuance. The policy and procedure manual adopted by the Village of Newtown informs the discipline practice of Newtown and who may author discipline for what infractions. Kobasuk's written reprimand fails to establish "formal rules or understandings" necessary to establish policy and therefore *Monell* liability fails to attach here and Newtown is entitled to summary judgment as a matter of law. *Jackson v. City of Cleveland,* 586 F.Supp.3d 737 (N.D. Ohio 2022), *rev'd on other grounds,* 64 F.4th 736 (6th Cir. 2023).

**e. <u>Mark Kobasuk In His Individual Capacity Is Entitled to Political Subdivision Immunity With Respect To Plaintiff's State Law Claims</u>**

The Village of Newtown and Mark Kobasuk in his official capacity are entitled to political subdivision immunity pursuant to R.C. Chapter 2744 with respect to all state law claims alleged

against them. Any claims against Mark Kobasuk in his official capacity are claims against the Village of Newtown. "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Plaintiff has alleged the following state tort claims against the Village of Newtown: defamation; false light; intentional infliction of emotional distress; retaliation in violation of public policy; and intentional interference. As a preliminary matter, political subdivisions are immune from claims of intentional torts. *Carroll v. Cuyahoga Cmty. Coll.,* 2023-Ohio-3628, ¶¶ 37-38, 226 N.E.3d 423, 431-32. However, R.C. 2744.09(B) removes the immunity of political subdivisions when an employee brings an action against an employer if the matter arises out of that employment relationship.

The Supreme Court of Ohio has held that R.C. 2744.09(B) only removes immunity of a political subdivision but does not remove immunity from the employees of political subdivisions. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.,* 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 27 ("In a civil action brought by an employee of a political subdivision against another employee of the political subdivision arising out of the employment relationship, R.C. 2744.09(B) removes immunity only as to the political subdivision and does not affect the statutory immunity of the fellow employee.").

Pursuant to R.C. 2744.03(A)(6), there are certain exceptions to political subdivision employee immunity. The exceptions to immunity per the statute are set forth as follows:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

If none of the exceptions are applicable, the employee is entitled to immunity as a matter of law. At the outset, there is nothing in the Revised Code that expressly imposes liability on an individual for any of those claims. Turning then, to R.C. 2744.03(A)(6)(a), "manifestly outside the scope," Ohio courts have described that as follows:

> In the context of immunity, an employee's wrongful act, even if it is unnecessary, unjustified, excessive, or improper, does not automatically take such act manifestly outside the scope of employment. *Elliott v. Ohio Department of Rehab. & Corr.* (1994), 92 Ohio App.3d 772, 775, 637 N.E.2d 105 (1994). It is only where the acts of the governmental employee are motivated by actual malice that their conduct may be outside the scope of their state employment. *James H. v. Dept. of Mental Health & Mental Retardation* (1980), 1 Ohio App.3d 60, 61, 539 N.E.2d 437. The act must be so divergent that it severs the employer-employee relationship. *Elliott* at 775. Conduct is within the scope of the employment if it is initiated, in part, to further promote the master's business. *Martin v. Cent. Ohio Transit Auth.* (1990), 70 Ohio App.3d 83, 92, 590 N.E.2d 411.

Under R.C. 2744.03(A)(6)(b), malicious conduct is conduct "indulging or exercising malice; harboring ill will or enmity.'" *Jackson v. Butler Cty. Bd. of City. Commrs.,* 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist. 1991), quoting *Teramano v. Teramano,* 6 Ohio St.2d 117, 118, 216 N.E.2d 375 (1996). "Malice" can also be defined as the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id.* at 453-454, 602 N.E.2d 363. "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Jackson,* 144 Ohio App.3d at 309, 760 N.E.2d 24. "Wanton" misconduct is "the failure to exercise any care toward those to whom a duty of care

is owed in circumstances in which there is a great probability that harm will result." *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266. "Reckless" conduct is conduct characterized by "the conscious disregard of or indifference to a known risk or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

Here, there is no evidence of any exception to immunity pursuant to R.C. 2744.03(A)(6). All of the conduct allegedly attributable to Kobasuk was done expressly within his authority as the Mayor for the Village of Newtown. Kobasuk is alleged to have discussed policy and practices with other mayors within the Cincinnati area to determine how best to operate a police department, consulted with Chief Richard Wallace in order to obtain a better working relationship with Synan and get a better handle on the morale of the police department, issued a written warning to the Chief of Police for perceived employment violations, had meetings with independent investigator, Duckett, about FLSA requirements and time sheets involving salaried employees, and generally operated a small Village. Synan's testimony and the evidence before this Court fail to establish any malice, recklessness, bad faith or wanton misconduct on the part of Kobasuk. The evidence before the Court at most establishes that Kobasuk was seeking stronger oversight of the police department and its operations. This falls well short of any showing of the misconduct necessary to pierce his veil of immunity. As such, Kobasuk is entitled to political subdivision immunity with respect to the state tort claims alleged against him in his individual capacity.

### f. **Plaintiff's Defamation Claim Fails As A Matter of Law**

Plaintiff's claim for defamation in Count II of his Amended Complaint fails as a matter of law. At the outset, Kobasuk and Newtown are entitled to qualified privilege with respect to this

claim. The elements of the common-law action of defamation are (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Weber v. Ferrellgas, Inc.,* 2016-Ohio-4738, 68 N.E.3d 207 ¶ 42 (11th Dist.); *also Hahn v. Kotten,* 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975). Expressions of opinion are generally protected under Ohio law. *Byrne v. Univ.* In Ohio, defamation claims are subject to a one-year statute of limitations and the claim accrues upon the first publication. *AIX Specialty Ins. Co. v. Big Limo, Inc.,* 547 F.Supp.3d 757, 766 (S.D. Ohio 2021).

Here, Plaintiff alleges in his Amended Complaint that Kobasuk made statements that constitute defamation per se. (Doc 13, ¶ 98, PAGEID 163). Many of those alleged statements date back to 2016 and 2017, well outside the applicable statute of limitations. Plaintiff's original Complaint was filed on March 8, 2024. (Doc 2, Complaint, PAGEID 55). Thus, the only alleged statements within a year of that date are any statements made during a meeting with Mayor Kobasuk, Tom Synan, Terry Fairley and Jeff Drescher that occurred on February 21, 2024. This meeting was secretly recorded by the Chief of Police. (Plaintiff Exhibit 13, audio recording). The purpose of the meeting was to discuss staffing, training, and producing a monthly report to council. (Doc 56, Terry Fairley Depo., vol. II, PAGEID 2262). This was a private meeting that occurred the Village office. *Id.* at 2261. Any statements made by Kobasuk were made to employees and officials of the Village of Newtown and related to the performance of the Village and its police chief. These are unquestionably statements made in the interest of the Village and to people with privity within the Village. There is therefore no disclosure to a third-party. Further, the statements made by Kobasuk during the meeting were his opinion of the events unfolding in Newtown based

upon complaints and other information he received. There are no facts to support Plaintiff's claim that Kobasuk intentionally and knowingly defamed Synan.

Additionally, all statements made by Kobasuk were in the scope of his employment and defendants are therefore entitled to qualified privilege. "Even in case where a plaintiff has established a prima facie case of defamation, a defendant may invoke the defense of conditional or qualified privilege." *Lakota Loc. School Dist. Bd. of Edn. v. Brickner,* 108 Ohio App.3d 637, 647, 671 N.E.2d 578 (6th Dist. 1996). "In a case where it is found that a conditional or qualified privilege does exist, the burden is on the plaintiff to demonstrate, by clear and convincing evidence, that the defamatory statements were made with 'actual malice.'" *Lakota* at 647-648, 671 N.E.2d 578, citing *Jacobs v. Frank,* 60 Ohio St.3d 111, 573 N.E.2d 609 (1991). "Where the circumstances of the occasion for the alleged defamatory statements are not in dispute, the determination of whether there is a qualified privilege is a question of law for the trial court." *Lakota* at 648, 671 N.E.2d 578.

"A publication is privileged when it is 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where is his interest is concerned.'" *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).

> A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonable believed by the defendant to exist, which case on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would

be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. *Hahn* at 245-246, 331 N.E.2d 713, quoting 33 American Jurisprudence at 124 (1941) (Libel and Slander, Section 126).

As set forth above, the statements at issue here were made in a private meeting with Newtown council members and the Chief of Police. The purpose of the meeting was to improve performance within the Village and specifically within the police department. The statements reflect the topics were entirely business related and Kobasuk's perception that there was a breakdown in communication between the Chief and the Mayor's office. Kobasuk likewise commented on Synan's time spent away from the Village. (Doc 54, PAGEID 2022). These statements all pertain to Kobasuk's interest in running the Village of Newtown. Thus, to be excepted from qualified privilege, the statements must have been made with actual malice. Statements are made with "actual malice" when they are made with knowledge that they are false or with reckless disregard as to their truth or falsity. *Jacobs,* 60 Ohio St.3d at 116, 573 N.E.2d 609. Thus, there must be a showing that the false statements were made with a high degree of awareness of their probable falsity. *Id.* at 118, 573 N.E.2d 609. Further, the alleged defamatory statements must be viewed with regard to the subjective belief of the author. *Id.* at 119, 573 N.E.2d 609.

Again, here, Kobasuk's statements reviewed in their entirety do not reveal actual malice. Kobasuk offered opinion statements regarding his impression of the Chief's performance in his duties. Kobasuk believed his statements to be true based upon complaints from officers and conversations with other officials. There is no evidence to suggest any statements made with malice, all statements were opinions, none were published to third parties and this claim should be dismissed as a matter of law.

### g. **Plaintiff's Claim for False Light Fails As A Matter of Law**

Plaintiff's Third Claim for false light is likewise without merit. Although "related, false light and defamation are different causes of action." *Dudee v. Philpot,* 1st Dist., 2019-Ohio-3939, 133 N.E.3d 590 ¶ 82. A claim for false-light invasion of privacy occurs when "[o]ne who gives publicity to a matter concerning another that places the other before he public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld,* 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051. The primary distinction between defamation and false-light is "the information at issue must be 'publicized' which is different than 'published.'" *Dickinson v. Spieldenner,* 6th Dist., 2017-Ohio-667, 85 N.E.3d 552, ¶ 29, *quoting Welling* at ¶ 52. Stated otherwise, "the information is disseminated 'to the public at large, or to so many persons that the matter must be substantially certain to become public knowledge.'" *Id.,* quoting *Welling* at ¶ 53. Further, "false-light invasion of privacy defendants are afforded at least as much protection as defamation defendants." *Id.* at ¶ 30. Accordingly, "the defense of qualified privilege may apply," and "the same reasons that necessitate the dismissal of a defamation claim may support the dismissal of a false-light claim." *Id.*

For the reasons set forth in the preceding paragraph regarding the failure of the defamation claim, this claim likewise fails as a matter of law.

**h.** **Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails As A Matter of Law**

Plaintiff's Fourth Claim for intentional infliction of emotional distress fails as a matter of law. In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt. Inc.,* 71 Ohio St.3d 408, 410-411, 644 N.E.2d 686 (1994). "Whether conduct rises to the level of extreme and outrageous conduct constitutes a question of law." *Krlich v. Clemente,* 2017-Ohio-7945, 98 N.E.3d 752 ¶ 26 (11th Dist.), quoting *Jones v. Wheelersburg Local School Dist.,* 4th Dist. Scioto No. 12CA3513, 2013-Ohio-3685, 2013 WL 4647645.

"The question of whether conduct is 'extreme and outrageous' is a matter of law for the Court." *Mitchell v. Fujitec Am., Inc.*, No. 1:20cv-363, 2022 U.S. Dist. LEXIS 49271, at *28 (S.D. Ohio Mar. 21, 2022). A court "may dismiss a claim for intentional infliction of emotional distress when the conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Meminger v. Ohio Univ.,* 102 N.E.3d 642, 644, ¶ 14 (Ohio Ct. App.) (citing *Morrow v. Reminger & Reminger Co., LPA.*, 183 Ohio App.3d 40 (10th Dist. 2009)). Extreme and outrageous conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 6 Ohio B. 421, 453 N.E.2d 666, 671 (Ohio 1983). Moreover, "it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Meminger*, 102 N.E.3d at 646 (quoting *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 58 877 N.E.2d 377, 386 (Ohio Ct. App.

29

2007)). In *Shepard v. Griffin Services, Inc*., the court held purposely discriminating based on sex, defaming the employee's reputation, publishing private information about the employee, retaliation, and termination of employment did not constitute extreme and outrageous conduct. *Shepard v. Griffin Services, Inc*. 2002 WL 940110, *7 (Ohio Ct. App.).

Synan's accusations are not sufficient operative facts to demonstrate that any of the defendants' conduct, as a matter of law, was "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency." *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983). Synan testified he has not sought counseling or other therapy treatments in connection with any of the allegations giving rise to this claim. (Doc 53, PAGEID 1634-1635). Synan testified only that the rumors circulating regarding his employment with Newtown were distressing and a tarnish to his reputation. *Id.* at 1634. This falls well below any required showing for intentional infliction of emotional distress. Additionally, "[w]hen a privilege, qualified or absolute, attaches to statements made in a defamation action, those statements remain privileged for purposes of derivative claims such as intentional infliction of emotional distress[.]" *A&B-Abell Elevator,* 73 Ohio St.3d at 15, 651 N.E.2d 1283. Accordingly, summary judgment is proper on this claim as well.

### i. <u>There Is No Claim For Retaliation in Violation of Public Policy</u>

Plaintiff's Fifth Claim for Relief does not allege a valid claim. It therefore necessarily fails as a matter of law. Ohio courts have not recognized a claim for retaliation in violation of public policy. In *Bools v. General Electric Co.*, this Court explained that "our review of Ohio law finds no case extending the public policy tort to claims involving a wrongful failure to hire or retaliation." The court held that the plaintiff's public policy claim for a wrongful failure to hire or retaliation failed as a matter of law because Ohio courts were reluctant to expand the exception to

the doctrine of employment-at-will beyond wrongful termination claims. *Bools v. General Elec.* Co., 70 F.Supp.2d 829, 832 (S.D. Ohio 1999).

Moreover, in *Kerr v. Hurd*, the plaintiff asserted "it was a violation of clearly expressed Ohio policy to protect free expression rights to retaliate." The court granted summary judgment on the claim because "Ohio courts have never recognized a common law cause of action for violation of Ohio public policy beyond the context of termination of an at-will employee." *Kerr v. Hurd*, 694 F.Supp.2d 817, 848 (S.D. Ohio 2010). Therefore, because Ohio courts do not recognize a claim for retaliation in violation of public policy, the claim fails as a matter of law.

### j. **Plaintiff's Claim for "Intentional Interference" Fails As A Matter of Law**

Plaintiff's sixth cause of action for "intentional interference" fails as a matter of law. Plaintiff alleges in his Amended Complaint that both his employment relationship with the Village and business relationships with other agencies in Hamilton County have been the subject of interference. (Doc 13, PAGEID 167). Those two claims will be taken in turn.

"The general rule in Ohio is that an employee earning a living wage has a right to pursue such employment free from unwarranted interference by third persons, and that one who maliciously or wantonly procures the discharge of an employee is liable to the employee in an action for damages." *Contadino v. Tilow* (1990), 68 Ohio App.3d 463, 467, 589 N.E.2d 48, citing *Lancaster v. Hamburger* (1904), 70 Ohio St. 156, 71 N.E. 289. "However, the right of noninterference in an employment relationship is limited. There are those whose position vis-à-vis the employee and the employer entitles them to intrude upon the employment relationship." *Contadino,* 68 Ohio App.3d at 467. In *Daup v. Tower Cellular, Inc.* (2000), 136 Ohio App.3d 555, 568, 737 N.E.2d 128, the court stated that "while actions for intentional interference with an employment contract are cognizable against 'outsiders' to the employment relationship, Ohio

31

courts have been reluctant to recognize actions by employees against their supervisor made within the scope of the defendant's duties." See, e.g., *Rayel v. Wackenhut Corp.* (June 8, 1995), Cuyahoga App. No. 67459, 1995 WL 350077 ('this court has unequivocally stated that 'a supervisor of an employee cannot be held liable for tortious interference with contract.' *** As such, appellant's claim involves a suit by a subordinate employee against a supervisor. Under the law of this district, no such action can lie."). Further, Ohio courts have approved *** 'the well-recognized privilege of officers, directors, officers, and creditors to interfere with contracts in the furtherance of their legitimate business interests***." *Canderm Pharmacal, Ltd. V. Elder Pharmaceuticals, Inc.* C.A. 6, 1988), 862 F.2d 597, 601. Here, Kobasuk was the mayor for the Village of Newtown and the direct supervisor of Synan. Kobasuk was not a third party or outsider to Synan's employment with Newtown. This claim therefore fails.

Synan also alleges intentional interference with business relationships. "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach of termination of the relationship; (4) damages resulting therefrom. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.,* 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775. "In such cases the law has generally required proof that the defendant has acted maliciously." *A&B-Abell Elevator,* 73 Ohio St.3d at 15, 651 N.E.2d 1283. A party cannot tortiously interference with his own business relationship. *Castle Hill Holdings LLC v. Al Hut, Inc.,* Cuyahoga App. No. 86442, 2006-Ohio-1353, 2006 WL 726911.

Synan, in his testimony, identifies only Hamilton County Police Chiefs Association, task forces and police officers and council members. (Doc 53, PAGEID 1635). He testified these are not contractual relationships and that none of the associations in which he is participating are paid

32

positions. *Id.* at 1635-1636. Synan has not identified anyone with whom he had a business relationship and that such relationship has been terminated as a result of any intentional interference with Kobasuk. Further, he has not alleged any damages as a result. Having failed to satisfy any of the elements of this claim, this cause of action fails as a matter of law.

### k. There Has Been No Violation of Ohio's Open Meetings Act

Plaintiff's seventh claim for relief alleges violations of Ohio's Open Meeting Act. As a preliminary matter, a presumption of regularity exists when a public body enters into executive session to discuss employee matters. *State ex rel. Hicks v Clermont Cnty. Bd. of Commissioners,* 2022-Ohio-4237, 171 Ohio St.3d 593, 599, 219 N.E.3d 894, 901. Under this presumption of regularity, absent evidence to the contrary, courts should presume that a public body in executive session discussed the topics stated in its motion to enter executive session and did not discuss any matters not stated in the motion. *Id.* It is the plaintiff's burden to prove otherwise. *Id.* Further, for a public body to convene into executive session, the public body must state the statutory purpose or purposes of the executive session. *Id.* at 602. The public body is not required to discuss every topic that it includes in its motion to enter executive session. *Id.* For example, a public body might not know before it enters executive session exactly what will be discussed during the session.

Based upon the Supreme Court's holding, it is thereby presumed that Newtown's councilmembers only discussed those topics designated in each executive session. Plaintiff alleges that secret meetings were held regarding Chief Synan and the potential imposing of discipline. (Doc 13, ¶ 142, PAGEID 169). But there is no evidence before this Court that any topics were discussed outside of the executive session topics or that council improperly convened to discuss Chief Synan. Plaintiff has not satisfied his burden of proving the executive sessions were not for

33

the stated statutory purpose. As such, Defendants are entitled to summary judgment as a matter of law.

### l. __Plaintiff Is Not Entitled to Declaratory or Injunctive Relief__

Plaintiff's eighth cause of action seeks injunctive and declaratory relief. It is unclear from the Amended Complaint what this action is seeking. Nevertheless, there is no merit to this claim. The Defendants committed no constitutional or statutory violations and as such declaratory judgment should not issue as a matter of law. As is described in detail in this Motion, the Newtown Defendants acted at all times in a lawful and appropriate manner.

The Declaratory Judgment Act, 28 U.S.C.S. § 2201, gives federal courts the jurisdiction and discretion to declare the rights of litigants under certain conditions. Courts have jurisdiction when there is "an actual controversy, the resolution of which will confer certain rights or status upon the litigants." *Corron v. Corron,* 40 Ohio St.3d 75, 79, 531 N.E.2d 708 (1988). However, the act is unique in that it gives courts "substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). This discretion is such that "although the District Court has jurisdiction of the suit under the Federal Declaratory Judgments Act, it is under no compulsion to exercise that discretion." *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Courts weigh five factors before exercising their discretion. Those factors are:

> (2) Whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being use merely for the purpose of "procedural fencing" or "to provide an arena for the race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.,* 161 F.Appx. 562, 563 (6th Cir. 2006).

Here, the factors do not weigh in favor of the Court exercising jurisdiction. The alternative remedy here is summary judgment. Further, this action is simply procedural fencing in connection with Plaintiff's Complaint. It will not settle the controversy and declaratory judgment should therefore be denied.

### m. Punitive Damages Are Not Available Here

The Ohio Supreme Court "has long prohibited the assessment of punitive damages against a municipal corporation, except when specifically permitted by statute." *Cementech, Inc. v. Fairlawn,* 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24, ¶ 12, citing *Rannells v. Cleveland,* 41 Ohio St.2d 1, 6-7, 321 N.E.2d 885 (1975) (emphasizing that the burden of punitive damages assessed on a municipal corporation would fall on the taxpayers). Here, there is no statute that specifically assesses punitive damages against Newtown for any of the claims alleged under state law. With respect to any claim for punitive damages alleged against Kobasuk in his individual capacity, as set forth in the argument section pertaining to political subdivision immunity, Kobasuk took no action here that would constitute actual malice for purposes of a punitive damage award. *Preston v. Murty,* 32 Ohio St.3d 334, 335-336, 512 N.E.2d 1174 (1987).

Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Because punitive damages are a mechanism for punishing the defendant for "willful or malicious conduct," they may be granted "only on a showing of the requisite intent." *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 310, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

There is nothing in the record to support a claim for punitive damages. As set forth in detail above, there is no constitutional violation here and as such there can be no punitive damages under § 1983. Further, also set forth in great detail in this Motion, there has been no conduct on behalf of any Newtown employee that constitutes willful or malicious conduct. The evidence here proves only a contentious working relationship between an employee and his (former) boss. There is nothing here to support a claim for punitive damages.

### n. **Plaintiff's Age Discrimination Claim Fails As A Matter of Law**

Plaintiff's final claim for relief alleges age discrimination under both Federal and Ohio law.[2] To establish a prima facie claim of age discrimination under the ADEA, a plaintiff must show that: (1) he was at least forty years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker. *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 317 (6th Cir. 2007). An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant. *Grosjean v. First Energy Corp.,* 349 F.3d 332, 336 (6th Cir. 2003). "The fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Tuttle, supra,* 474 F.3d at 317. If a plaintiff can establish a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Id.* if the defendant can do so, then the burden shifts back to the plaintiff "to demonstrate by a preponderance of the

---

[2] While Plaintiff's age discrimination claim fails as a matter of law, for the reasons addressed in this section, it bears noting that Kobasuk cannot be held individually liable under the ADEA. *See e.g., Sack v. Barbish*, N.D.Ohio No. 1:21-cv-00364-PAB, 2021 U.S. Dist. LEXIS 172730, at *10 (Sep. 13, 2021). Additionally, as it pertains to Defendants' entitlement to political subdivision immunity, addressed above, claims asserted under RC. 4112.02(A) do not except a political subdivision employee of immunity pursuant to R.C. 2744.03(A)(6)(c). *Hauser v. City of Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, ¶ 18.

evidence that the defendant's proffered reason was a pretext for age discrimination." *Id.* Age discrimination claims brought under the Ohio statute are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman-Rupp Co.,* 309 Fed.Appx. 990, 995 (6th Cir. 2009).

The burden of persuasion is on the plaintiff to show that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servrs., Inc.,* 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009).

Plaintiff is unable to establish a prima facie case. First, under the second prong of the test, Synan cannot show that he was subjected to an adverse employment action. An adverse action is one in which an employee suffers "a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status." *Barrett v. Lucent Techs., Inc.,* 36 F.App'x 835, 841 (6th Cir. 2002). Synan alleges in his Amended Complaint that he was not compensated in a manner equal to other employees. (Doc 13, PAGEID 171). With respect to these raises, Synan received a 2.05% raise in 2023 and a 1% raise in 2024. (Doc 55-4, PAGEID 2211). While an employer's withholding of a discretionary raise or bonus that that an employee is otherwise entitled to based upon the terms and conditions of employment may constitute an adverse action, Synan has not created a material question that he was entitled to an annual raise greater than what he received. The extensive testimony of the council members and Kobasuk was that the Synan was given a raise comparable to other police chiefs in the neighboring communities and that the Village of Newtown established a salary ordinance in an effort to keep Newtown in line with its competitors. Terry Fairley testified at length regarding his research from the Center for Local Government and

that the raises recommended for the individual employees was data driven. Fairley further testified that the written reprimand received by Synan in 2024 was considered by him with respect to an appropriate raise for that year. Nothing in the testimony even suggests that age was a consideration by any of the decisionmakers.

Further, Synan cannot identify anyone "similarly-situated" that was significantly younger than him and treated differently. The Sixth Circuit has explained that in analyzing the treatment of similarly-situated employees, the question is whether the plaintiff has "demonstrate[d] that he or she is similarly situated to the non-protected employee in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998). For purposes of resolving an age-based wage discrimination claim under the ADEA, the Sixth Circuit has held that the "relevant factors include the skill, effort, responsibilities of each job and the working conditions under which each job is performed." *Conti v. Universal Enter., Inc.,* 50 Fed.App'x 690, 699 (6th Cir. 2002).

Here, Synan has not identified any similarly situated employee, in a non-protected class, that was treated differently than him. Synan testified in his deposition that *every* employee was treated differently than he was with respect to the raises. (Doc 53, PAGEID 1640). But it is his burden of persuasion and that does not satisfy the requirement of establishing an employee was similarly situated in all relevant respects. Significantly, Chief Synan was (and is) the most highly compensated employee at the Village of Newtown. Having therefore failed to satisfy the prima facie case, there is no need to proceed to the next step of the analysis. However, even if this Court were to find Synan did establish a prima facie case, Newtown has articulated a legitimate, non-discriminatory reason for Synan's 2023 and 2024 raise.

To satisfy the employer burden with respect to a legitimate, non-discriminatory reason, the Village need only "raise a genuine issue of material fact as to whether it discriminated" against Synan. To do this, the Village "must clearly set forth, through the introduction of admissible evidence, the reasons" for its employment decisions. *Provenzano v. LCI Holdings,* 663 F.3d 806, 813 (6th Cir. 2011). Again, as set forth above, the Village has offered numerous, legitimate and non-discriminatory reasons for the raises received by Synan. The raises were based upon the relevant data, the required comparable consideration dictated by the salary ordinance, as well as Synan's performance at the Village. Synan has continued to receive raises throughout his career at Newtown and has not otherwise faced any adverse employment action while at the Village. He has not experienced any loss of pay, has not been removed from his position, transferred, or otherwise deprived of any material benefits. Synan's claim for age discrimination therefore fails and defendants are entitled to summary judgment as a matter of law.

## V. CONCLUSION

Based upon the foregoing, Defendants, the Village of Newtown, Ohio and Mark Kobasuk respectfully request this Court grant summary judgment in their favor and dismiss all of Plaintiff's claims against them with prejudice.

Respectfully submitted,

*/s/ Katherine L. Barbiere*
Katherine L. Barbiere (0089501)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
5300 Socialville-Foster Road, Suite 200
Mason, OH 45040
T. 513-707-4252 | F. 513-583-4203
kbarbiere@smbplaw.com

*/s Emily T. Supinger*
Emily T. Supinger (0074006)
Strauss Troy Co, LPA
Federal Reserve Building
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio 45202
T. 513-621-2120 | F. 513-241-8259
etsupinger@strausstroy.com
***Attorneys for Defendants***

*/s/ Myrl H. Shoemaker, III*
Myrl H. Shoemaker, III (0099149)
Freund, Freeze & Arnold
88 East Broad Street, Suite 875
Columbus, Ohio 43215
T. 614-827-7300 | F. 614-255-7510
mshoemaker@ffalaw.com
***Attorney for Defendant Mark Kobasuk***

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed this 17th day of October, 2025 using the Clerk of Court's CM/ECF electronic filing system which will send notice of such filing to all counsel of record.

*/s/ Katherine L. Barbiere*
Katherine L. Barbiere