**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THOMAS SYNAN, JR. | : | CASE NO. 1:24CV169 |
| | : | |
| PLAINTIFF, | : | JUDGE COLE |
| | : | |
| VS. | : | |
| | : | |
| MARK KOBASUK, *et al.* | : | |
| | : | |
| DEFENDANTS. | : | |

**DEFENDANTS, MARK KOBASUK AND THE VILLAGE OF NEWTOWN, OHIO'S PROPOSED UNDISPUTED FACTS**

Defendants, Mark Kobasuk and the Village of Newtown, Ohio, submit the following proposed undisputed material facts in support of its motion for summary judgment:

1. Chief Thomas Synan is the current police chief for the Village of Newtown, Ohio. He was appointed to that position in 2007 and has served an uninterrupted term through today. (Doc 53, Depo. of Synan, PAGEID 1459).

2. Prior to his role as Police Chief, Synan served Newtown as a patrol officer, sergeant, lieutenant and then acting chief. (Doc 53, Depo. of Synan, PAGEID 1459). Synan has not been suspended or fired at any time during his tenure as a Newtown officer. (Doc 53, Depo. of Synan, PAGEID 1566-1567).

3. Mark Kobasuk is the former mayor for the Village of Newtown. (Doc 54, Depo. of Kobasuk, PAGEID 1877).

4. Kobasuk was originally appointed to Village Council for the Village of Newtown in June of 2005. (Doc 54, Depo. of Kobasuk, PAGEID 1789).

5. Kobasuk then ran for election in November of 2005 and won his seat. (Doc 54, Depo. of Kobasuk, PAGEID 1789).

6. While Kobasuk was on Village Council, Synan testified he and Kobasuk had a good working relationship. (Doc 54, Depo. of Kobasuk, PAGEID 1497).

7. Synan testified he interacted with Kobasuk personally and socially when Kobasuk took shooting lessons from Synan's private company. (Doc 54, Depo. of Kobasuk, PAGEID 1497-1498).

8. Kobasuk testified he voted to appoint Synan the Chief of Police. (Doc 54, PAGEID 1877).

9. Kobasuk became Mayor of Newtown on January 1, 2016. (Doc 54, PAGEID 1877).

10. Kobasuk resigned as mayor in June of 2025 and the position was filled by Terry Fairley. (Doc 56, Depo. of Fairley, PAGEID 2274).

11. During Kobasuk's tenure as Mayor, the only discipline ever issued to Synan was a written reprimand. (Doc 54, PAGEID 1880-1881).

12. Kobasuk testified that no other discipline was ever contemplated or discussed involving Synan. (Doc 54, PAGEID 1880).

13. During a meeting that took place on September 12, 2016, Mayor Kobasuk introduced new time sheets and directed the Department Heads to begin requiring all employees to utilize the form sheet. (Doc 54, PAGEID 1884).

14. Following the meeting, Chief Synan stayed to discuss the time sheets with Kobasuk. (Doc 54, PAGEID 1885).

15. The Mayor explained that Village Council, and in particular Councilmember Short, was concerned that certain employees were putting in less than the required 40 hours. (Doc 54, PAGEID 1885-1886).

16. As such, all employees were to notify the Mayor if they were going to be late or absent from work. (Doc 54, PAGEID 1884).

2

17. Synan objected to filling out a timesheet for his own time because he was an exempt employee. (Doc 54, PAGEID 1887).

18. At the time of the meeting, Synan testified he was turning in a timesheet every two weeks that listed his sick and vacation time only. (Doc 53, PAGEID 1479).

19. Synan testified he was submitting those sheets to the fiscal officer in order to get paid. (Doc 53, PAGEID 1477).

20. Synan was not, during his tenure as Chief and up and until January of 2017, recording his work schedule. (Doc 53, PAGEID 1481).

21. Kobasuk testified that only two employees were not recording their time – the maintenance supervisor and chief of police. (Doc 54, PAGEID 1812).

22. Synan testified he cooperated with the timesheet request for a period in 2017 until he hired a lawyer, also in 2017. (Doc 54, PAGEID 1483).

23. During that same period, when Synan sent a list of questions from his attorney to the Village secretary, he also stopped sharing his calendar of events. (Doc 54, PAGEID 1489).

24. Synan began keeping a timesheet again in 2024 when Village council passed new personnel practices in 2024. (Doc 54, PAGEID 1488).

25. From 2018 to 2024, Synan kept only one timesheet which included his sick and vacation time. (Doc 54, PAGEID 1494).

26. In the 2016 timeframe in which Synan was asked to keep a timesheet, he sent an email to Mayor and Council detailing his concerns as to why he should not be asked to do so. (Doc 38-1, Exhibits to Kobasuk Depo., PAGEID 782).

27. In the email, Synan raised concerns about Salary Exempt Employees keeping time and other FLSA exemptions. Due to the email from Synan and ongoing concerns regarding timesheets,

FLSA requirements and ensuring the Newtown was appropriately spending its public funding, the Village retained Douglas Duckett to perform a review of Newtown's practices. (Doc 54, PAGEID 1792-93, 1899, 1919).

28. Mr. Duckett performed that review and authored a presentation to Council describing his findings. (Doc 38-1, Exhibits to Kobasuk Depo, PAGEID 673-678).

29. During Mr. Duckett's review of the law and Newtown's policies, an anonymous complaint from a Newtown police officer was received by the mayor's administrative assistant detailing four points of review. (Doc 54, PAGEID 1793, Doc 38-1, PAGEID 691).

30. In response to receiving this complaint, Kobasuk asked Duckett to look into the allegations. (Doc 54, PAGEID 1793).

31. The police officer who delivered the note was Kent Orso. (Doc 54, PAGEID 1795).

32. Duckett then conducted an interview of Officer Orso and Officer Robinson regarding their complaints. (Doc 38-1, PAGEID 683-696).

33. Officer Robinson approached Mr. Duckett on his own and requested a conversation. (Doc 54, PAGEID 1803).

34. Duckett reported the officers reached out to him to discuss concerns about how much time and Village money Chief Synan was spending outside of Newtown when Newtown was short on both officers and equipment. (Doc 54, PAGEID 1804).

35. During the interviews, both officers raised concerns about Synan and his management of the police department. (Doc 54, PAGEID 1807).

36. In addition to hearing these complaints from the officers, Kobasuk also heard that Synan spent a fair amount of time outside of the Village on outside activities. (Doc 54, PAGEID 1818).

37. Those activities included SWAT and the Heroin Coalition. (Doc 54, PAGEID 1818).

38. Synan also told Kobasuk that he did not work on Mondays. (Doc 54, PAGEID 1818).

39. Kobasuk testified he did not receive a detailed timesheet from Synan until January of 2024. (Doc 54, PAGEID 1828-1829).

40. Kobasuk testified that if Synan was going to be out of Hamilton County on activities related to SWAT or the Heroin Coalition, he would notify the mayor of his absence. If he was attending events in Hamilton County, he did not seek pre-approval. (Doc 54, PAGEID 1863-1864).

41. In the same 2016 time period that Duckett was conducting interviews of the complaining officers, a rumor was also circulating that Synan allowed a civilian woman to drive him home from a bar when he was intoxicated. (Doc 54, PAGEID 1905).

42. Kobasuk testified he heard the rumor from Synan directly. (Doc 54, PAGEID 1906).

43. In addition, Becky Fairley, the administrative assistant to the Mayor, reported seeing Synan driving on Round Bottom Road with a woman in his police vehicle. (Doc 54, PAGEID 1905-1906).

44. In response to hearing the rumor, Kobasuk offered to provide a letter to Synan disavowing the rumors. (Doc 54, PAGEID 1919, Doc 38-1, Ex. 13, PAGEID 795).

45. The letter was provided to Synan only. (Doc 54, PAGEID 1919).

46. On December 25, 2016, Kobasuk proposed an "action plan" to address the complaints received about morale in the department. (Doc 38-1, Ex. 12 and 14, PAGEID 793 and 796).

47. The Action Plan was rescinded before it went into effect. (Doc 54, PAGEID 1925).

48. Following the rumor and issuance of the December 2016 letter from Kobasuk, in January of 2017, Chief Richard Wallace of Amberly Village reached out to Kobasuk asking to get together. (Doc 58-1, PAGEID 2629).

49. When Chief Wallace contacted Kobasuk, his understanding was there was a morale issue within the Newtown Police Department that was a concern for the mayor. (Doc 58, PAGEID 2500-2501).

50. Chief Wallace testified he had also heard the rumor about Synan being intoxicated in the unmarked cruiser with a female driver. (Doc 58, PAGEID 2501-2502).

51. Chief Wallace testified he heard the rumor from Synan and possibly from another police chief. (Doc 58, PAGEID 2501-2502).

52. He testified he did not discuss the rumor with Kobasuk. (Doc 58, PAGEID 2501).

53. Chief Wallace testified that Kobasuk requested he evaluate the operation of the Newtown Police Department and make recommendations as to areas of improvement. (Doc 58, PAGEID 2504).

54. Chief Wallace then interviewed the officers working for the Newtown Police Department as well as Kobasuk and the fiscal officer. (Doc 58, PAGEID 2505-2506).

55. Following his investigation, Chief Wallace made several recommendations to improve operations within the Department. He recommended that Synan resign from the SWAT team. (Doc 58, PAGEID 2507).

56. Chief Wallace recommended to the mayor that the part-time police officers should not be able to make complaints directly to the fiscal officer. (Doc 58, PAGEID 2508-2509).

57. Overall, Chief Wallace concluded there were approximately three officers who were not in support of Synan and those officers were creating a hostile work environment for the group. (Doc 58, PAGEID 2511).

58. Chief Wallace concluded both the mayor and Synan needed to improve communication with the other. (Doc 58, PAGEID 2512).

59. Chief Wallace recommended Synan make purchases to improve the equipment in the officers' vehicles. (Doc 58, PAGEID 2514).

60. At the same time he was consulting with Chief Wallace regarding the operation of the department, Kobasuk sought counsel from other sources regarding aspects of operation. In December of 2016, Kobasuk spoke to Mike Burns, formerly of the Village of Indian Hill, in an effort to hire a Village Administrator. (Doc 54, PAGEID 1994-1995).

61. Kobasuk spoke to Burns about keeping timesheets but Burns did not have any information regarding the operation of a police department. (Doc 54, PAGEID 1995-1996).

62. Kobasuk raised with Burns a prior issue in the Village of Newtown wherein a 911 caller made a report that Synan had pulled her over in an unmarked car. (Doc 54, PAGEID 1996-1998).

63. Burns did not have any recommendation as to how that should be handled. Kobasuk spoke to Scott Lahrmer, of Amberly Village, also about hiring a Village Administrator and the keeping of timesheets. (Doc 54, PAGEID 2028-2029).

64. Kobasuk spoke with Lt. Chin about village police chiefs and participation in SWAT. (Doc 54, PAGEID 2027-2028).

65. A Safety Committee Meeting was held on January 10, 2023, Synan testified that the need for the meeting arose after Councilmember Jeff Drescher requested an exit interview with Officer Jake Stoll. (Doc 53, PAGEID 1614).

66. Drescher contacted the mayor and mentioned that he would like to conduct an exit interview of Stoll. (Doc 57, Jeff Drescher Depo., PAGEID 2385-2386).

67. The mayor agreed to the interview and spoke with Drescher to work with Synan to set it up. (Doc 57, Jeff Drescher Depo., PAGEID 2386).

7

68. Officer Stoll was contacted and declined the exit interview.  (Doc 57, Jeff Drescher Depo., PAGEID 2388).

69. After Drescher's request for an exit interview, Synan testified that a Sergeant within the department contacted him and wanted to address council over what he perceived was a 'witch-hunt' against the Chief.  (Doc 53, Tom Synan Depo., PAGEID 1614-1615).

70. The same Sergeant requested a Safety Committee Meeting with council to address his concerns.  The meeting was held on January 10, 2023.  (Doc 53, Tom Synan Depo., PAGEID 1613).

71. Synan testified that he made one comment at the meeting in response to a request for a succession plan.  (Doc 53, Tom Synan Depo., PAGEID 1616).

72. Synan testified at least four officers spoke at the meeting.  (Doc 53, Tom Synan Depo., PAGEID 1618).

73. Following the Safety Committee Meeting, Kobasuk issued a written reprimand to Synan. (Doc 54, PAGEID 1946-1947, Doc 38-1, Ex. 19, PAGEID 807-809).

74. In the written reprimand, issued February 6, 2023, Kobasuk addressed issues with Synan he believed were not being appropriately addressed within the department.  The written reprimand specifically addressed Synan's opposition to the request for an exit interview. The written reprimand also addressed Kobasuk's belief that Synan was not appropriately communicating with his officers based upon comments made at the Safety Committee meeting.  (Doc 54, PAGEID 1946-1947, Doc 38-1, Ex. 19, PAGEID 807-809).

75. Synan refused to sign the written reprimand.  (Doc 53, PAGEID 1620).

8

76. During Synan's tenure as Police Chief, the Village of Newtown established salary ordinances in an effort to address police and other pay within the Village of Newtown.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2133-2134).

77. The salary ordinance selected several neighboring entities to be used as benchmarks or comparables to guide raises within the Village.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2134-2135).

78. Terry Fairley, a councilmember at the time, and the fiscal officer Keri Everett, worked together to make salary recommendations to be approved by council.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID at 2135-2136).

79.  There were six total entities considered when making salary recommendations.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2135-2136).

80. In order to develop recommendations for council consideration, Everett would call the six entities and ask for the particular community's salary ordinance.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2138).

81. In addition to that data, Fairley and Everett would also consult data from the Center for Local Government.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2138-2139).

82. Everett and Fairley put together a spreadsheet with the recommended percentage increases for every employee in the Village of Newtown.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2139).

83. The recommendations are reviewed with the mayor and then presented to council.  Council has the ultimate vote; the mayor can make recommendations but cannot determine salaries.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID at 2139-2140, Doc 55-4, PAGEID 2204-2218).

84. Once council has an opportunity to review the recommendations, council passes a salary ordinance in open meeting.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2141).

85. In 2023, Synan received a 2.05% raise.  (Doc 55, Terry Fairley Depo., Vol. I., PAGEID 2143, Doc 55-4, PAGEID 2211).

86. This raise was based upon the data from the Center for Local Government as well as the comparable communities.  (Doc 55, PAGEID 2146; Doc 57, PAGEID 2427-2428).

87. In 2024, Synan received a 1% raise.  (Doc 55-4, PAGEID 2211).

88. The 2024 raise was also data driven based upon the research conducted by Fairley and the Fiscal Officer.  (Doc 55, PAGEID 2147-2148).

89. In connection with the data, councilmember Fairley also considered the written reprimand issued to Synan during the 2023 calendar year.  (Doc 55, PAGEID 2153).

90. Synan received a 3.5% raise for 2025.  (Doc 53, PAGEID 1460).

Respectfully submitted,

*/s/ Katherine L. Barbiere*
Katherine L. Barbiere (0089501)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
5300 Socialville-Foster Road, Suite 200
Mason, OH 45040
T. 513-707-4252 | F. 513-583-4203
kbarbiere@smbplaw.com

*/s Emily T. Supinger*
Emily T. Supinger (0074006)
Strauss Troy Co, LPA
Federal Reserve Building
150 E. Fourth Street, 4th Floor
Cincinnati, Ohio 45202
T. 513-621-2120 | F. 513-241-8259

etsupinger@strausstroy.com
**Attorneys for Defendants**

***/s/ Myrl H. Shoemaker, III***
Myrl H. Shoemaker, III (0099149)
Freund, Freeze & Arnold
88 East Broad Street, Suite 875
Columbus, Ohio 43215
T. 614-827-7300 | F. 614-255-7510
mshoemaker@ffalaw.com
**Attorney for Defendant Mark Kobasuk**

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed this 17th day of October, 2025 using the Clerk of Court's CM/ECF electronic filing system which will send notice of such filing to all counsel of record.

***/s/ Katherine L. Barbiere***
Katherine L. Barbiere